**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marvin T. Cook,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-17-00670-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Marvin T. Cook's appeal of the Social Security Administration's decision to deny disability benefits and supplemental security income. (Doc. 1). For the reasons set forth below, the Court vacates the ALJ's decision to deny benefits and remands for additional proceedings.

## BACKGROUND

In 1989, Mr. Marvin T. Cook was serving as a marine when his helicopter crashed in the South China Sea. (Tr. 1134). Fourteen people died in the crash, and only eight individuals survived. (Tr. 1134). As a result of the crash, Mr. Cook suffers from knee problems, depression, and post-traumatic stress disorder.

After an honorable discharge from the military, Mr. Cook worked for various employers, including seven years as a technician for OK Trailers. (Tr. 1134). Most recently, Mr. Cook worked for Worldwide R.V. until 2011. (Tr. 1134). On November 16, 2011, Mr. Cook filed an application for disability benefits with an onset date of March 1, 2011. (Tr. 22). The claim was denied. (Tr. 225–34). Mr. Cook then appeared

before Administrative Law Judge Paula Fow on July 15, 2013, (Tr. 110–169), who found that Mr. Cook was not disabled. (Tr. 195–212). Mr. Cook appealed, and the Social Security Administration Appeals Council remanded for a new hearing and decision. (Tr. 213–18). The Appeals Council directed ALJ Fow to allow Mr. Cook to address an additional consultative examination report, obtain additional evidence, consider the treating opinion of Dr. Spencer Beck, and expand the record if warranted. (Tr. 216). ALJ Fow held a second hearing on March 30, 2016. (Tr. 46–109).

At the second hearing, Mr. Cook described that he lost his job as an R.V. technician in 2011 because the company hired a replacement, and not because his disability precluded him from doing his job. (Tr. 53). Mr. Cook also described that he diligently tried to find other work, but "it was impossible" because no jobs were available, "especially in the R.V. field." (Tr. 53). He searched for work while he collected unemployment benefits, and he "just looked for just whatever [he] could do" such as "[s]weep floors." (Tr. 56). Then, in 2013, the Department of Veterans Affairs ("VA") increased Mr. Cook's PTSD disability rating and increased his monthly payments. (Tr. 58–59).

In evaluating whether Mr. Cook was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. 23–24). At step one, the ALJ

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

found that Mr. Cook had not engaged in substantial gainful activity since March 1, 2011, the alleged onset date. (Tr. 24). At step two, the ALJ determined that Mr. Cook suffered from the following severe impairments: bipolar disorder, post-traumatic stress disorder, alcohol abuse in sustained remission, borderline personality disorder, and left knee impairment. (Tr. 25). At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. 25).

At that point, the ALJ reached step four and determined Mr. Cook's residual functional capacity ("RFC"),[2] concluding that Mr. Cook could perform medium work as defined in 20 C.F.R. § 404.1567(c), with the exception that he could only occasionally kneel and crouch and "would be limited to occupations requiring no more than simple, routine, repetitive tasks not performed in a fast-paced production environment and which require no more than occasional interaction with supervisors, coworkers, and members of the public." (Tr. 27). The ALJ also found that Mr. Cook's RFC prohibited him from performing his past relevant work as an R.V. technician. (Tr. 36–37). However, the ALJ found that Mr. Cook's RFC allowed him to work in various other jobs in the national economy, including as a janitor, laundry worker, or cook helper. (Tr. 37–38). As part of her conclusion, the ALJ assigned little weight to the opinion of Mr. Cook's VA treating physicians, (Tr. 34–36); discredited Mr. Cook's subjective testimony as inconsistent with the evidence in the record, (Tr. 28); and assigned minimal weight to the VA's finding that Mr. Cook is disabled, (Tr. 36).

The Appeals Council denied review of this decision on January 10, 2017. (Tr. 1–6). Mr. Cook filed a complaint in Federal Court on March 7, 2017. (Doc. 1).

---

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

# DISCUSSION

## I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). A reviewing court may draw specific and legitimate inferences from an ALJ's decision, but it cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

## II. Analysis

Mr. Cook argues the ALJ (a) did not properly weigh the medical opinion evidence; (b) erroneously discredited Mr. Cook's subjective testimony; and (c) did not properly consider the VA's disability determination. (Doc. 16).

### A. Medical Opinion Evidence

An ALJ must give a treating physician's medical opinion controlling weight

concerning a claimant's impairment "if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001); see *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."). However, an "ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).

If the treating physician's opinion is contradicted by another doctor, an ALJ can reject the treating physician's opinion only if she provides "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 831 (internal quotations omitted). "Sheer disbelief is no substitute for substantial evidence," and thus, an ALJ must specify which evidence supports the decision to reject the treating physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). An ALJ may cite to diagnostic test results, contrary reports from examining physicians, and conflicting testimony from the claimant to reject the opinion of a treating physician. *Benecke*, 379 F.3d at 594.

When a treating physician's opinion is contradicted, the ALJ must consider certain factors in 20 C.F.R. § 404.1527(c)(2)–(6) to determine how much weight to afford the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). "These factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)–(6)).

The ALJ did not adopt a medical opinion and instead assessed specific restrictions based on the evidence as a whole. Mr. Cook asserts that the ALJ failed to properly reject

the opinion of his treating physicians and wrongfully relied on non-examining consultative physicians. (Doc. 16 at 22–30).

1. Dr. Anthony

The ALJ discredited Dr. Anthony's medical opinion for some valid reasons. First, an ALJ should consider the length of the treatment relationship and give more weight to opinions of treating doctors with longer treatment histories. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017); 20 C.F.R. § 404.1527(c)(2)(i). Dr. Anthony had treated Mr. Cook for only three months in 2013 when he gave the opinion that Mr. Cook is completely disabled with an onset date in 2011. (Tr. 1122). An ALJ need not accept the opinion of a treating physician if the opinion is "brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The ALJ stated that the opinion lists only diagnoses, is conclusory, and does not include any medical records or explanations. (Tr. 35). In fact, Dr. Anthony's opinion is limited to ten pages and consists primarily of limitation markings with little, if any, explanations for his opinion. (Tr. 1122–31). The ALJ did not err when discrediting Dr. Anthony's testimony for the above reasons.

An ALJ may also discredit a treating physician with conflicting clinical evidence. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). The ALJ found that Mr. Cook's performance in medical evaluations and response to medical treatment conflicted with Dr. Anthony's opinion that Mr. Cook's disabling limitations resulted in part from "mood disturbance," "emotional lability," and "suicidal ideation." (Tr. 1124). The ALJ noted that an examining physician reported that Mr. Cook found "both medication management and group counseling through the Veterans Administration Medical Center helpful" and that medication helped modulate his temper. (Tr. 1139). A VA progress note states that "[a]nger and irritability have been improved" with medicine, and Marvin denied having suicidal thoughts or being delusional or psychotic. (Tr. 481). A separate VA progress note stated that Mr. Cook found dialectical behavior therapy to be helpful and that mood symptoms were well controlled with quetiapine and sertraline. (Tr. 1782). Later, Mr.

Cook told an examining physician that visual hallucinations had mostly remitted. (Tr. 2221).

Dr. Anthony also noted, however, that Mr. Cook was moderately limited to remember work procedures and detailed instructions, and was markedly limited to carry out detailed instructions and maintain concentration and sustain routine without supervision. (Tr. 35, 1126). The ALJ did not address this aspect of Dr. Anthony's opinion, nor did the ALJ cite to substantial evidence of specific and legitimate reasons for discrediting Dr. Anthony's testimony concerning Mr. Cook's cognitive ability. Again, "[s]heer disbelief is no substitute for substantial evidence," and an ALJ must specify which evidence supports the decision to reject the treating physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Accordingly, the ALJ failed to provide sufficient evidence to discredit this aspect of Dr. Anthony's testimony with conflicting clinical evidence.

2. Dr. Beck

The ALJ erred when discrediting Dr. Beck's medical opinion. Although Dr. Beck opined that Mr. Cook had moderate limitations in his ability to interact appropriately with the public and get along with co-workers, Dr. Beck also opined that Mr. Cook had more severe, marked limitations in understanding, memory, and concentration. (Tr. 1171). Dr. Beck stated that "Mr. Cook's ability to complete a workday without interruptions" is "markedly limited" due to "[h]is ability to maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual and work in coordination with or near others . . . ." (Tr. 1229). Yet, similar to the analysis of Dr. Anthony's opinion, the ALJ addressed only Mr. Cook's moods, irritability and anger when discrediting Dr. Beck, and the ALJ did not discredit Dr. Beck's opinion concerning Mr. Cook's limitations with memory and concentration. (Tr. 35–36). The ALJ noted that at times Mr. Cook's "joy" had improved; his mood was good; and he was pleasant and cooperative; (Tr. 35–36), but this evidence does not address Mr. Cook's ability to focus, remember details, or concentrate. Given that Dr. Beck had a multi-year, extensive

treating relationship with Mr. Cook, the ALJ needed to provide more evidence to discredit his opinion. *See Trevizo*, 871 F.3d at 676; *Benecke*, 379 F.3d at 594. As such, the ALJ erred by failing to provide specific and legitimate reasons to discredit Dr. Beck's opinion. *Lester*, 81 F.3d at 831

### 3. Dr. Geary

The ALJ erred when discrediting Dr. Geary's examining opinion. "As is the case with the opinion of a treating physician," an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinion of an examining physician, and if contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citations omitted).

Dr. Geary examined Mr. Cook twice. At the first examination on July 12, 2013, Dr. Geary diagnosed Mr. Cook with various psychotic conditions, including bipolar disorder, PTSD, and cerebrovascular accident with impairment of memory, attention, and concentration and speed of information processing. (Tr. 1138). He opined that Mr. Cook had limitations in understanding and memory, sustained concentration and persistence, social interactions, and adaptation. (Tr. 1139–40). At this examination, Dr. Geary conducted tests to evaluate Mr. Cook's memory and mental processes, and Dr. Geary found that Mr. Cook's memory and processing speeds were in the deficient range. (Tr. 1139). Dr. Geary examined Mr. Cook again on May 3, 2016 and reaffirmed the diagnosis and opinion testimony. (Tr. 2220–22). At the second evaluation, Dr. Geary noted that "[t]here does not appear to be notable improvement in Mr. Cook's cognitive functioning." (Tr. 2221). The ALJ discredited the opinion in part because it "is inconsistent with the opinion of claimant's treating mental health providers at the VA, who had a long term treating relationship with claimant." (Tr. 34)

The ALJ failed to provide specific examples of how the VA treating physicians contradicted Dr. Geary's opinion. In fact, the ALJ cited to Dr. Naeem Pathan's six-page report that makes no mention of Mr. Cook's memory, attention, or concentration, and the opinion confirmed Mr. Cook's diagnosis of various psychotic conditions including

bipolar disorder and PTSD. (Tr. 2210–14). Additionally, Dr. Geary's opinion of marked limitations with memory and processing speeds is supported—not contradicted—by Dr. Beck's opinion that "Mr. Cook's ability to complete a workday without interruptions" is "markedly limited" due to "[h]is ability to maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual and work in coordination with or near others . . . ." (Tr. 1229). Although the consultative physicians determined that Mr. Cook did not have understanding and memory limitations, they did determine that Mr. Cook had sustained concentration and persistence limitations. (Tr. 178, 190). The ALJ summarily stated that other opinion testimony conflicted with Dr. Geary's opinion and failed to clearly and convincingly support this conclusion with specific and legitimate references in the record. Therefore, the ALJ erred.

In sum, the ALJ committed multiple errors in reviewing the treating and examining physician's testimony, specifically concerning their opinion that Mr. Cook suffers from marked cognitive limitations. As described in more detail below, the ALJ's errors are not harmless, and the ALJ should reconsider the opinion testimony on remand.

### B. Mr. Cook's Testimony

An ALJ is not required "to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to [social security regulations]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, an ALJ follows a two-step process to determine the credibility of a claimant's testimony of subjective pain or symptoms. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1035–36 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen, 80 F.3d.* at 1281.

To determine whether the subjective claims are credible, an ALJ may consider objective medical evidence, prescribed treatments, consistency with daily activities, and other various factors. 20 C.F.R. § 404.1529(c).

Mr. Cook presented sufficient objective medical evidence that he suffers from various psychotic conditions, including PTSD and impairment of memory, attention, concentration, and speed of information processing. The analysis therefore focuses on the second step of the process—whether the ALJ offered specific, clear and convincing reasons to discredit Mr. Cook's subjective testimony.

An ALJ may consider lack of objective medical evidence in the credibility analysis, but it cannot form the sole basis for discounting subjective testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Trevizo v. Berryhill*, No. 15-16277, 2017 WL 4053751, at *12, n.10 (9th Cir. Sept. 14, 2017). An ALJ may not "improperly cherry-pick[]" some normal findings while ignoring a number of abnormal findings. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). In Mr. Cook's case, the ALJ stated that "clinical studies, treatment notes, and claimant's level of functioning suggest he is not as limited as alleged." (Tr. 30). The ALJ noted that Mr. Cook's performance on cognitive testing did not indicate disabling impairment. (Tr. 30, 1150–56). Without reference, the ALJ noted Mr. Cook's performance on cognitive evaluations and his recollection of two out of three words in a memory test. (Tr. 30). This result does not show the full picture of the objective evidence, as Mr. Cook remembered none of the words in a three word memory test at his 2013 evaluation with Dr. Geary, (Tr. 1133), and he recalled one word in the three word memory test at the 2016 evaluation, (Tr. 2216). Additionally, the ALJ cursorily stated that Mr. Cook performed well on mini cognitive tests, scoring in the twenties out of thirty on the exam, but the ALJ did not adequately show that these scores are within a normal range or that this objective evidence is inconsistent with Mr. Cook's claims. The ALJ's incomplete discussion of the objective evidence did not adequately discredit Mr. Cook.

///

If a claimant can effectively treat his or her medical condition, then the impairment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The operative question is not whether treatment completely resolves the medical condition, but whether treatment alleviates the severity of the symptoms such that the claimant can participate in work activities. *Id.* That is, some medical improvement is irrelevant if the claimant remains incapable of employment. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ discredited Mr. Cook in part because medical treatment alleviated his symptoms. (Tr. 31). The ALJ, however, only addressed Mr. Cook's treatment for hallucinations, depression, and anger, and the ALJ did not address medical treatment for Mr. Cook's cognitive functioning, which also served as the basis for the disability determination. Further, the ALJ did not address whether the improvement from medical treatment resolved the medical condition to the point that Mr. Cook was capable of employment. Because the ALJ failed to address these issues, she erred when discrediting Mr. Cook's testimony due to successful medical treatment.

Courts have "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent" with disabling symptoms, "because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014). A claimant need not be completely incapacitated to receive disability benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Even if the claimant's daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.

2012). The ALJ stated that Mr. Cook's personal activities did not indicate disabling impairment. For example, Mr. Cook joined a bowling league in May 2014, and although he reported that it was difficult for him to participate in the league because of the crowds, (Tr. 1592), in November 2015, the only reported problem from participating in the bowling league was a cut in his finger. (Tr. 1736). Additionally, he searched for work in line with the RFC for an extended period of time after the alleged onset date of disability. (Tr. 53–56). The ALJ also noted that Mr. Cook regularly went to the park to fly model planes. (Tr. 31). Although these activities show that Mr. Cook is not completely incapacitated and is capable of some limited social interactions, Mr. Cook's participation in these activities is fairly limited. Plus, Mr. Cook seems to participate in these activities with much less regularity than would be required for full-time work. Accordingly, the ALJ failed to properly discredit Mr. Cook's testimony with examples of his daily activities.

Considering these errors, the ALJ failed to reject the claimant's testimony about the severity of his symptoms by "offering specific, clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1281.

### C. VA's Disability Determination

"[A]n ALJ must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). This is so because the two programs share the same goal of "providing benefits to those unable to work because of a serious disability" and "evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis" by focusing on "analyzing a claimant's functional limitations." *Id.* However, a finding of disability by the VA does not compel the ALJ to find disability as well, and "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* For example, an ALJ may give less weight to a VA disability rating where the ALJ had evidence unavailable to the VA did have, or where the ALJ notes that the VA's disability rating "rested on an opinion that the ALJ rejected."

- 12 -

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

The ALJ assigned Mr. Cook's VA disability rating minimal weight because (1) it was not supported by the evidence as a whole; (2) did not indicate any specific limitations on the claimant's ability to perform work-related activity; and (3) was based on VA criteria. (Tr. 36). The ALJ's precipitate dismissal did not reference any evidence which was not available to the VA, and neither did the ALJ describe any of the VA's reasoning for its decision. The ALJ did not give specific reasons for assigning minimal weight instead of great weight to the VA disability rating. Therefore, the ALJ erred when failing to provide adequate reasoning for discrediting the VA disability rating.

### D. Harmful Error

If an ALJ errs, the decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted). The extent of the errors in the ALJ's consideration of physician's opinion testimony, claimant's testimony, and the VA disability determination substantially negates the validity of the ALJ's ultimate conclusion. The Court finds that the ALJ committed harmful error.

### E. Remand for Additional Proceedings

When a court finds that the ALJ committed harmful error, the Social Security Act "makes clear that courts are empowered to . . . modify[ ] or reverse a decision by the Commissioner 'with or without remanding the case for a rehearing.'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting § 405(g)). "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation omitted). But, the Ninth Circuit, like every other circuit, recognizes that "in appropriate circumstances courts are free to reverse and remand a determination by

the Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019 (citing cases from every circuit).

Remanding for an award of benefits is not at the full discretion of the reviewing court. Rather, the Ninth Circuit follows the "three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits[.]" *Id.* at 1020. The Claimant must establish: first, that the ALJ failed to provide legally sufficient reasons for rejecting evidence; second, that the record has been fully developed and further administrative proceedings would serve no useful purpose; and third, that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Treichler*, 775 F.3d at 1100–01 (citing *Garrison*, 759 F.3d at 1020). Before moving from the second step to the third step, a reviewing court must assess whether there are outstanding issues requiring resolution before considering whether to credit improperly discredited evidence as true. *Treichler*, 775 F.3d at 1105. If all three conditions are met, the reviewing court may remand for an award of benefits. *Id.* at 1101. Nonetheless, the reviewing court retains flexibility in determining the appropriate remedy if the record as a whole still creates "serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1107 (citing *Garrison*, 759 F.3d at 1021).

In his brief, Mr. Cook requests the Court to remand for benefits, but he does not present an argument for his request. In this case, remand for additional proceedings is appropriate. First, the alleged onset of disability is questionable. At the second hearing with the ALJ, Mr. Cook's attorney admitted that he did not know the exact onset date of disability, and he even stated that Mr. Cook "basically already testified" that the onset date is incorrect. (Tr. 75). Additionally, whether Mr. Cook could perform work in the national economy remains questionable. Treatment notes question whether Mr. Cook's psychotic symptoms are totally disabling, such as a 2012 report stating that Mr. Cook "was alert and oriented, pleasant and cooperative," (Tr. 468); a 2016 report stating that he had good energy, slept well, had good concentration, and was not currently distractible,

(Tr. 2210); and a March 2016 report, stating that Mr. Cook had a cooperative rapport, appropriate affect, and linear and logical thought processes, (Tr. 2034). Therefore, the Court takes "the proper course . . . to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099.

## CONCLUSION

As described above, the ALJ erred when determining that Mr. Marvin T. Cook's significant impairments did not prohibit him from performing various jobs available in the national economy. The Court vacates the decision and remands for additional proceedings.

**IT IS HEREBY ORDERED** that the ALJ's decision is vacated and remanded for additional proceedings. The Clerk of the Court is directed to enter judgment accordingly.

Dated this 31st day of May, 2018.

Honorable G. Murray Snow
United States District Judge